No. 01-079

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 7

STATE OF MONTANA,

Plaintiff and Respondent,

v.

CHESTER BAUER,

Defendant and Appellant.

APPEAL FROM: District Court of the Third Judicial District,

In and for the County of Deer Lodge,

Honorable Ted L. Mizner, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Michelle Sievers and Wade J. Dahood, Knight, Dahood,

McLean & Everett, Anaconda, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; John Paulson,

Assistant Attorney General, Helena, Montana

Michael B. Grayson, County Attorney; Joan S. Borneman, Deputy

County Attorney, Anaconda, Montana

Mark Murphy, Assistant Attorney General and Special Deputy

County Attorney, Helena, Montana

Submitted on Briefs: June 21, 2001
Decided: January 15, 2002

Filed:

_____

Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 On appeal, Chester Bauer challenges the evidentiary basis of a jury conviction of incest in the Third Judicial District Court, Deer Lodge County, Montana. We affirm.

¶2 We restate the issues on appeal as follows:

¶3 1. Did the District Court err by denying a motion for a directed verdict of acquittal on the basis of insufficiency of evidence?

¶4 2. Did the District Court abuse its discretion by denying Bauer's motion for a mistrial for the erroneous admission of "other crimes" evidence?

¶5 3. Did the District Court abuse its discretion by denying Bauer's request to admit the state crime lab's DNA report as exculpatory evidence?

¶6 4. Did the District Court abuse its discretion by declining to give a jury instruction on weak and less satisfactory evidence?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7 In 1983, Chester Bauer (Bauer) was sentenced to the Montana State Prison for aggravated assault and sexual intercourse without consent. On September 22, 1997, both convictions were vacated on the basis of DNA test results that excluded Bauer as the

assailant and other "newly discovered evidence" of actual innocence. However, Bauer remained incarcerated for another two years under sentences for convictions he gained while in prison. In 1991, Bauer pleaded guilty to the charge of intimidating a prison employee's spouse, and, in 1996, he was convicted of sexual intercourse without consent with a 19-year-old female inmate at the Blaine County Jail, where Bauer had been assigned for his protection after serving as a State's witness at the trials subsequent to the 1991 prison riot. Bauer was released on probation in November 1999, and took up residence with his mother in Townsend.

¶8 Amanda Bauer (Amanda) is Bauer's daughter and was two years old when Bauer was sent to prison in 1983. She did not see Bauer again until she visited the prison with her grandmother in October 1999, three weeks prior to Bauer's release. Amanda is mildly developmentally disabled and attended special education classes since grade school. Amanda graduated from high school in May 1999. Both Amanda and her sister, Nicole, suffer from Frederick's Ataxia. This progressively debilitating physical disorder and scoliosis of the lower spine affect Amanda's coordination and balance, necessitating that she often use a wheelchair. Amanda's speech and ability to write have also deteriorated, and her life expectancy is greatly reduced. Due to Amanda's mental and physical disabilities, she receives Social Security Insurance benefits, which enable her to live independently.

¶9 Bauer arranged to visit his extended family for the 1999 Christmas holiday in Anaconda, where his two sisters live with their families and his father was visiting. In addition, Bauer's ex-wife, Amanda's mother, resides in Anaconda with her husband, children and Amanda's younger sister, Nicole. According to Bauer's probationary travel permit, he planned to stay in Anaconda with his sister, Janet Ricketts. Instead, Bauer spent Christmas Eve with his 18-year-old daughter Amanda in her apartment.

¶10 According to Amanda's testimony, Bauer had non-consensual sex with Amanda two times during the evening of December 24, 1999. Afterward, Bauer told Amanda that the family would ostracize her and he would be returned to prison if she told anyone what had happened. The next day, Amanda's mother noticed that Amanda was unusually withdrawn during the holiday festivities, ignored her Christmas presents and appeared angry and upset. Amanda told no one of the alleged incest during the subsequent weeks.

¶11 Bauer returned to Anaconda on January 21, 2000. He again stated on his travel permit that he planned to stay with his sister. This time, however, Janet knew nothing of Bauer's

visit. According to Amanda's testimony, Bauer arrived at her apartment in the late afternoon with a case of beer, travel bag and television set. Amanda testified Bauer touched her sexually, poured beer down her clothes and coerced her to drink alcohol and take pills. In anticipation of Bauer's visit, Amanda arranged for a number of friends to come by her apartment and check on her that evening. Bauer refused to let anyone in the apartment and posted a note on the door stating that Amanda wanted no visitors. As an excuse to get Bauer out of her apartment, Amanda asked him to buy her a cappuccino at a convenience store located on the edge of town. Once alone, Amanda immediately telephoned her mother, who directed her to call the police.

¶12 Two officers from the Anaconda-Deer Lodge Police Department arrived at the scene before Bauer returned in his vehicle with the coffees. The officers testified that Amanda was highly distraught and wanted them to make her father leave. Amanda said nothing about any inappropriate touching at this time. The police discovered Bauer was on probation and presumed correctly that he was prohibited from consuming alcohol as a condition of release. Although Bauer denied drinking, the officers administered a field sobriety test, which Bauer failed. One officer took Bauer to the station, where a breath test showed a .07 alcohol level, which is below the presumptive level of impairment. The police did not charge Bauer with driving under the influence and released him to his mother, who accompanied Bauer back to Townsend that night.

¶13 Three days later, Bauer sent letters to Amanda and Amanda's mother in which Bauer accused Amanda of drug abuse, threatened to sever all contact between Amanda and Bauer's extended family, discussed suicide, and blamed Amanda for his decision to withhold the birthday gifts he promised to Amanda and Nicole. Bauer wrote that he learned compassion and caring during his 17 years in prison and urged Amanda's mother to encourage Amanda to visit him in Townsend. Several days afterward, Amanda disclosed the incest to her mother and to law enforcement authorities. The ensuing investigation led to a charge against Bauer on April 19, 2000, on one count of incest under § 45-5-507(1), MCA. The information was later amended to include the offenses of January 21, 2000, consisting of a second count of incest and one count of unlawful transactions with children under § 45-5-623, MCA.

¶14 At the conclusion of a three-day trial, the jury convicted Chester Bauer of one count of incest with Amanda for the 1999 Christmas Eve incident, and found him not guilty on the two other counts. The District Court denied Bauer's motion for a directed verdict or, in the alternative, a new trial. The court sentenced Bauer to life imprisonment, with an

additional 20 years as a persistent felony offender, and declared Bauer ineligible for parole due to his criminal history and predatory sexual behavior.

## ISSUE 1

*Did the District Court err by denying a motion for a directed verdict of acquittal on the basis of insufficiency of evidence?*

¶15 We review the sufficiency of evidence to support a jury verdict to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Merrick*, 2000 MT 124, ¶ 7, 229 Mont. 472, ¶ 7, 2 P.3d 242, ¶ 7; *State v. Olson* (1997), 286 Mont. 364, 371, 951 P.2d 571, 575-76. A directed verdict of acquittal is appropriate only when there is no evidence to support a guilty verdict. *State v. Bromgard* (1993), 261 Mont. 291, 293, 862 P.2d 1140, 1141. The credibility of witnesses and the weight to be given to their testimony are determined by the trier of fact, and disputed questions of fact and credibility will not be disturbed on appeal. *Olson*, 286 Mont. at 371, 951 P.2d at 576 (*citing State v. Ahmed* (1996), 278 Mont. 200, 212, 924 P.2d 679, 686). If evidence conflicts, it is within the province of the trier of fact to determine which will prevail. *Olson*, 286 Mont. at 371, 951 P.2d at 576. This Court has held repeatedly that a conviction for a sex offense may be based entirely on the uncorroborated testimony of the victim. *Olson*, 286 Mont. at 372, 951 P.2d at 576; *State v. Gilpin* (1988), 232 Mont. 56, 70, 756 P.2d 445, 453); *State v. Maxwell* (1982), 198 Mont. 498, 503, 647 P.2d 348, 351*; State v. Metcalf* (1969), 153 Mont. 369, 378, 457 P.2d 453, 458. "Only in those rare cases where the story of a witness is so inherently improbable or is so nullified by material self-contradiction that no fair-minded person could believe it may we say no firm foundation exists for the verdict based on it." *Maxwell*, 198 Mont. at 503, 647 P.2d at 351 (*quoting State v. Gaimos* (1916), 53 Mont. 118, 126, 162 P. 596, 599).

¶16 Bauer argues that the evidence produced at trial was insufficient to support the jury's verdict of guilty on one count of incest. Amanda's testimony served as the basis for conviction and Bauer asserts Amanda's story was inherently incredible due to internal contradictions. Specifically, Bauer claims a discrepancy in Amanda's testimony on direct examination and cross-examination concerning the number of times Bauer had sexual intercourse with her on December 24, 1999. Bauer also points out that Amanda testified she left her apartment on Christmas Eve and sought out a friend who lived nearby, but that the friend testified that she did not move to the apartment near Amanda until after the

Christmas holidays. And finally, Bauer notes Amanda testified she called her mother on the telephone on Christmas Eve, when she actually called her mother during the events of January 21, 2000.

¶17 Contrary to Bauer's contentions, however, we note no inconsistency in the essential elements of Amanda's pre-trial statements and her trial testimony. The trial transcript reveals that the prosecution failed to ask Amanda during direct questioning about the second rape on Christmas Eve, and her testimony on cross-examination regarding this second violation remains consistent with her pre-trial statements. While Amanda may have exhibited some confusion at trial about details involved in the two incidents of December 24 and January 21, she testified very clearly that her father engaged in sexual intercourse with her on December 24. Although Bauer testified that the sexual acts did not occur, the jury determined that Amanda's version of the December 24 incident was more credible, and its verdict reflects that determination.

¶18 To establish the essential elements of the offense of incest, the State was required to prove that Bauer knowingly had sexual contact or sexual intercourse with a descendant. Section 45-5-507(1), MCA. Bauer does not dispute that Amanda is his natural daughter, and does not contend that Amanda failed to testify that Bauer had sexual contact with her. We conclude the evidence presented was substantial and the District Court did not abuse its discretion by denying Bauer's motion for a directed verdict.

## ISSUE 2

*Did the District Court abuse its discretion by denying Bauer's motion for a mistrial for the erroneous admission of "other crimes" evidence?*

¶19 The determination of whether evidence is relevant and admissible is left to the sound discretion of the trial judge and will not be overturned on appeal absent a showing of abuse of discretion. *State v. Hansen*, 1999 MT 253, ¶ 20, 296 Mont. 282, ¶ 20, 989 P.2d 338, ¶20; *State v. Weeks* (1994), 270 Mont. 63, 80, 891 P.2d 477, 487-88. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Rule 403, M.R.Evid. Whether the probative value is outweighed by the prejudicial effect is within the trial court's discretion. *State v. Langford* (1994), 267 Mont. 95, 103, 882 P.2d 490, 495. A district court abuses its discretion when it "acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." *State v. Richardson*, 2000 MT 72, ¶ 24, 299 Mont. 102, ¶ 24, 997

P.2d 786, ¶ 24.

¶20 In response to Bauer's motion in limine, the District Court barred mention at trial by the prosecution of Bauer's felony convictions in 1991 and 1996. However, the court also ruled that the fact of Bauer's lengthy prior prison internment and his status as a probationer when he visited Amanda in Anaconda were admissible as part of the transaction.

¶21 To comply with the court's ruling, the State redacted the portions of two travel permits that listed Bauer's actual felony offenses. Bauer objected to the admission of the travel permits after they had been shown to the jury at trial because, while the specific felony convictions had been redacted on the forms, the defense realized the State failed to black-out the dates that the felony sentences would expire. The court sustained the objection, directed the State to redact the sentence expiration dates and offered to instruct the jury to disregard any reference to Bauer's prior felony convictions on the travel permits. Defense counsel agreed that a corrective instruction would only draw more attention to the prior felonies and moved for a mistrial. The court denied the motion. On appeal, Bauer contends the fact that he was a probationer who served time in prison is highly prejudicial information that constitutes "other crimes" evidence that should only have come into evidence after appropriate notice under the *Just* rules.

¶22 The State argues that the rules governing "other crimes" evidence do not apply, and cites *State v. Hayworth* for the proposition that, "it is well established that evidence which tends to explain circumstances surrounding the charged offense is relevant, probative and competent." *State v. Hayworth*, 1998 MT 158, ¶ 32, 289 Mont. 433, ¶ 32, 964 P.2d 1, ¶ 32 (*quoting State v. Wing* (1994), 264 Mont. 215, 225, 870 P.2d 1368, 1374). The State cites the transaction rule, which provides "where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction." Section 26-1-103, MCA. Because Bauer's history of imprisonment and his probationary status when he visited Amanda in Anaconda are inextricably linked to the circumstances surrounding the crimes charged, the State asserts the information is admissible. We agree.

¶23 In order for the jury to understand the context of the alleged incest, Amanda needed to explain that she had not seen or known her father because he had been incarcerated since she was a small child. Bauer's probationary status and his 17-year term in prison first came to the court's attention through the letters Bauer sent to Amanda and her mother days after the January 21 incident. Both letters were admitted into evidence without objection. Bauer

also used his prison sentence to silence Amanda. According to Amanda's testimony, Bauer told her he would be returned to prison and either die or commit suicide there if she spoke about the incest. The Anaconda-Deer Lodge police officer testified that he was aware that Bauer likely had violated a condition of his probation when the officers detained him for alcohol consumption on January 21. Bauer and his probation officer both explained to the court that Bauer was required to apply for permission to travel as another condition of probation. The travel permits were integral to the State's case and were presented to show Bauer falsified the forms to conceal his intention to stay with his daughter when visiting Anaconda. We conclude the District Court acted conscientiously and within the bounds of reason in allowing the facts of Bauer's prison internment and probationary status into evidence.

¶24 We next examine the specific error of the unredacted reference to the expiration date of Bauer's felony sentences using the two-step analysis we adopted in *Van Kirk* to determine whether the error prejudiced Bauer's right to a fair trial and therefore is reversible. *State v. Van Kirk*, 2001 MT 198, ¶¶ 37-47, 306 Mont. 215, ¶¶ 37-47, 32 P.3d 735, ¶¶ 37-47. The first step is to determine whether the error is a structural error or a trial error. *Van Kirk*, ¶ 37. Structural error affects certain substantial rights of the defendant and is typically of constitutional dimensions, precedes the trial, and undermines the fairness of the entire proceeding. *Van Kirk*, ¶ 38. Structural errors are automatically reversible. *Van Kirk*, ¶ 39.

¶25 Trial errors typically occur during the presentation of the case to the court and are subject to review under the harmless error statute, § 46-20-701, MCA. *Van Kirk*, ¶ 40. Section 46-20-701(1), MCA, provides that "[a] cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial." The State must prove that the trial error did not prejudice a substantial right of the defendant and that the error is harmless beyond a reasonable doubt. Section 46-20-701(2), MCA; *Van Kirk*, ¶ 42. Under the "cumulative evidence" test that we adopted in *Van Kirk*, we determine whether there is a reasonable probability that the erroneously admitted evidence might have contributed to the conviction. *Van Kirk*, ¶ 43. This test looks to whether the fact finder was presented with admissible evidence that proved the same facts as the tainted evidence. *Van Kirk*, ¶ 44. In addition, the quality of the tainted evidence, in comparison with the quality of the admissible evidence, must be such that there is no reasonable possibility that it might have contributed to the defendant's conviction. *Van Kirk*, ¶ 47.

¶26 The erroneous presentation to the jury of the unredacted dates on the travel permits indicating the expiration of Bauer's felony sentences constitutes trial error. While the jury received no information on Bauer's specific prior crimes, the unredacted dates signaled that felony convictions underlaid the requirement that Bauer obtain written permission from his probation officer prior to travel. As noted above, references to Bauer's probationary status and prior imprisonment arose during the testimony of Bauer, his probation officer, Amanda and an Anaconda police officer. The letters Bauer sent to Amanda and her mother, which were admitted as exhibits, mention discussions with his probation officer and Bauer's 17-year incarceration. The State maintains the admissible evidence presupposes the existence of a felony conviction in Bauer's past, while refraining from mention of the specific prior crimes, and presents the same inference to the jury as the tainted evidence. We conclude the introduction of inadmissible unredacted dates did not contribute to Bauer's conviction, was harmless beyond a reasonable doubt and did not prejudice Bauer's right to a fair trial. The District Court properly exercised its discretion by denying Bauer's motion for a mistrial.

## ISSUE 3

*Did the District Court abuse its discretion in denying Bauer's request to admit the state crime lab's DNA report as exculpatory evidence?*

¶27 In reviewing a district court's decisions regarding the admissibility of evidence relating to the extrinsic sexual conduct of victims of sexual crimes, we determine whether the district court abused its discretion. *State v. Detonancour*, 2001 MT 213, ¶ 19, 306 Mont. 389, ¶ 19, 34 P.3d 487, ¶ 19 (*citing State ex. rel. Mazurek v. Dist. Court of Fourth Jud. Dist.* (1996), 227 Mont. 349, 353, 922 P.2d 474, 477).

¶28 Four months after the incest incidents, investigators recovered the blanket Amanda believed covered the day bed when Bauer engaged in sexual intercourse with her. The blanket was submitted to the state crime lab for DNA analysis and some stains were tested for the presence of seminal fluid. Although semen was found, it did not match Bauer's DNA profile. The District Court excluded the report under the rape shield statute, but allowed the defense to make a limited inquiry to establish that no physical evidence linked Bauer to the scene.

¶29 At the trial, Lori E. Hutchinson from the state crime lab testified that she did not find Bauer's semen on the blanket. Later, the defense elicited a statement from Detective Dan

Blume of the Anaconda-Deer Lodge Police Department that the report showed the presence of someone else's seminal fluid on the blanket. With the essential findings of the DNA report inadvertently admitted into evidence at trial, Bauer claims the court abused its discretion in excluding a report that contradicts Amanda's testimony.

¶30 Montana's rape shield statute, enacted in 1973, "reflects a compelling interest in favor of preserving the integrity of the trial and preventing it from becoming a trial of the victim." *State v. Johnson*, 1998 MT 107, ¶ 19, 288 Mont. 513, ¶19, 958 P.2d 1182, ¶ 19 (*quoting State v. Anderson* (1984), 211 Mont. 272, 283, 686 P.2d 193, 199). The statute provides in relevant part:

> No evidence concerning the sexual conduct of the victim is admissible in prosecutions under this part except evidence of the victim's past sexual conduct with the offender or evidence of specific instances of the victim's sexual activity to show the origin of semen, pregnancy, or disease which is at issue in the prosecution.

Section 45-5-511(2), MCA. The Compiler's Comments describe the two exceptions as: 1) evidence of the victim's prior sexual contact with the defendant and, 2) evidence that refutes an inference derived from physical evidence of the crime offered by the victim.

¶31 Since all sexual contact between Bauer and his daughter is criminal and the State offered no physical evidence to refute at trial, neither exception to the rape shield statute applies in this case. Moreover, even if the DNA test had been completed in a more timely fashion, the results bear no relevance to the issue of whether Bauer committed incest. Detective Blume's summary of the findings of the DNA report notwithstanding, admission of the report into evidence would violate § 45-5-511(2), MCA, and would serve only to confuse or divert the jury. We hold that the District Court did not abuse its discretion in excluding the report.

## ISSUE 4

*Did the District Court abuse its discretion by declining to give a jury instruction on weak and less satisfactory evidence?*

¶32 Bauer asserts Amanda's testimony should be viewed with distrust for two reasons. First, he claims the State chose not to offer Amanda's torn pajamas to corroborate Amanda's testimony that her father ripped her nightshirt when he forced her to have sexual

intercourse with him. The State responds on appeal that Bauer never demonstrated the availability of the torn pajamas as evidence. Second, Bauer asserts the testimony of Amanda's psychological counselor regarding the impact of the incestuous rape on Amanda's emotional and psychic well-being constitutes stronger and more satisfactory evidence of the crime than Amanda's own testimony. The State replies that the prosecution accepted a pre-trial agreement to forego presentation of evidence of rape-trauma syndrome in exchange for denying the defense access to Amanda's mental health records.

¶33 Bauer's proposed jury instruction is based on § 26-1-303(5), MCA, which provides:

> If weaker or less satisfactory evidence is offered and it appears that it is within the power of the party to offer stronger and more satisfactory evidence, the evidence offered should be viewed with distrust.

After a discussion involving both counsel, the District Court declined to give the requested instruction, but concluded the defense could make an argument regarding weaker or less satisfactory evidence in its closing statement to the jury. The court recognized that the instruction amounts to a comment on Amanda's credibility and the weight to be given to her testimony. We agree with the District Court that such comments are better reserved for closing arguments and hold the court properly exercised its discretion in rejecting the proposed instruction.

## CONCLUSION

¶34 Bauer's conviction of the offense of incest is supported by sufficient evidence, and each of the challenged evidentiary and procedural rulings of the District Court falls within the court's discretionary authority. We conclude the District Court properly denied Bauer's motion for a directed verdict and did not abuse its discretion.

¶35 Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON