No. 04-060

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 70

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

LYNN MARIE PITTMAN,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                     In and For the County of Custer, Cause No. DC 02–12
                     Honorable Gary L. Day, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Cynthia K. Thornton, Attorney at Law, Miles City, Montana

      For Respondent:

            Hon. Mike McGrath, Attorney General; Micheal S. Wellenstein,
            Assistant Attorney General, Helena, Montana

            Garry R. Bunke, Custer County Attorney, Miles City, Montana

Submitted on Briefs:  February 8, 2005

Decided:  March 22, 2005

Filed:

_____
                       Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     A jury in the Sixteenth Judicial District Court, Custer County, found Lynn Marie Pittman guilty of assault on a peace officer, attempted assault on a peace officer, assault with bodily fluid and obstructing a peace officer.  Pittman appeals.  We affirm.

¶2     We restate the issues as follows:

¶3     1.  Did the District Court abuse its discretion in denying Pittman's motion for a change of venue?

¶4     2.  Were Pittman's rights to a fair trial and due process of law denied because all the witnesses against her were members of law enforcement?

¶5     3.  Did the District Court abuse its discretion in admitting a videotape of Pittman at the detention center into evidence?

¶6     4.  Did the District Court abuse its discretion in denying Pittman's request for a lesser-included offense instruction on resisting arrest?

¶7     5.  Is the evidence sufficient to sustain Pittman's convictions of assault on a peace officer and attempted assault on a peace officer?

¶8     6.  Did the District Court abuse its discretion in sentencing Pittman to prison instead of to the custody of the Department of Public Health and Human Services?

BACKGROUND

¶9     Around 2 a.m. on January 27, 2002, police officers responded to a report of a fight between two women--one of whom was Pittman--outside the 600 Lounge in Miles City,

2

Montana. Pittman was arrested for disorderly conduct, and Officer Dan Davis transported her to the Miles City detention center in a patrol car.

¶10 At the detention center, Pittman telephoned her mother, who agreed to come and bond Pittman out. After the two women visited in the community room at the detention center, however, Pittman's mother changed her mind and decided not to bond her daughter out. As Pittman's mother was leaving the detention center, Officer Bruce Bardon approached Pittman and directed her to return to the holding area of the jail. At that point, Pittman became combative and shouted obscenities. Captain Mike King helped Bardon regain control over Pittman, and Bardon and King, followed by a third officer, physically escorted her back to the holding area and persuaded her to sit in a chair.

¶11 When the third officer left the room, Pittman stood up from her chair, turned around and threw the chair at King. The chair hit King's hand and broke a bone in one of his fingers. After throwing the chair at King, Pittman advanced toward him. King grabbed her right arm, placed her in an armlock and pushed her on top of a desk. Pittman kicked at King as he tried to restrain her. Other officers heard the commotion and helped King handcuff Pittman.

¶12 One police officer recorded the ensuing series of events on the detention center's video camera. The officers asked Pittman to change into regulation orange pants and shirt, which she refused to do. Four officers restrained her while one of them dressed her in the pants. When they had finished, Pittman "reared up," spit in the face of Miles City Police Chief Lissa Power and tried to bite Power in the arm. Pittman did not succeed in biting through Power's sweatshirt. At that point, the officers abandoned any attempt to get Pittman

3

into the orange shirt. Instead, they placed a spit mask on her to keep her from spitting on anyone else. One officer grabbed each of her limbs and they carried her to a cell. Throughout, Pittman yelled, screamed, kicked and fought, as recorded on the videotape later introduced into evidence at trial.

¶13 The State of Montana filed six separate criminal charges against Pittman. She pled guilty to two misdemeanor charges in city court and was tried before a jury in District Court on the remaining four charges: felony assault on a peace officer for throwing the chair at King; felony attempted assault on a peace officer for attempting to bite Power; misdemeanor assault with a bodily fluid for spitting on Power; and misdemeanor obstructing a peace officer for struggling with the officers while they were getting her into the orange pants.

¶14 Prior to her trial, Pittman accused a Custer County Sheriff's Office detention officer of having sexual intercourse with her while she was awaiting trial as an inmate in the detention center. The Miles City Star newspaper reported her allegations and described her previous criminal record. Pittman moved for a change of trial venue based on that newspaper article. The District Court found there was no prejudicial publicity and denied Pittman's motion.

¶15 After trial, the jury found Pittman guilty of all four charges against her. At the sentencing hearing, two expert witnesses testified about her mental health; one on her behalf and one on the State's behalf. The District Court sentenced Pittman to ten years in Montana State Women's Prison for assault on a peace officer and ten years for attempted assault on a peace officer, to be served concurrently. In addition, it sentenced her to a seven-year

prison term for being a persistent felony offender, to be served consecutive to her concurrent ten-year sentences. Finally, the District Court sentenced Pittman to one year in jail for the offense of assault with bodily fluid and six months in jail for obstructing a police officer, both sentences to run concurrently with her ten-year felony sentences. Pittman appeals.

## ISSUE 1

¶16 Did the District Court abuse its discretion in denying Pittman's motion for a change of venue?

¶17 Pittman's motion for a change of venue was based on alleged prejudice from adverse pretrial publicity pursuant to § 46-13-203, MCA. A defendant seeking a change of venue due to prejudicial publicity must establish that the news reports were inflammatory and that they actually inflamed the prejudice of the community to an extent that a reasonable possibility exists that the defendant may not receive a fair trial. *State v. Hill*, 2000 MT 308, ¶ 51, 302 Mont. 415, ¶ 51, 14 P.3d 1237, ¶ 51 (citation omitted). We will reverse a district court's denial of a defendant's motion for change of venue only upon a showing of abuse of discretion. *Hill*, ¶ 50 (citation omitted).

¶18 On appeal, Pittman contends that the inclusion of her previous criminal record in the Miles City Star article, combined with the report of her allegations of a sexual relationship between herself and the detention officer, were of such an inflammatory nature that she could not receive a fair trial in Miles City or Custer County. She argues the article presented her in such a bad light that the jury would convict her based on the rumor of the relationship and her past criminal history, rather than on the evidence and testimony presented at trial.

5

¶19 For purposes of the first element of the pretrial publicity test, we have defined inflammatory publicity as editorializing on the part of the media or a calculated attempt to prejudice public opinion against the defendant or to destroy the fairness of the pool from which the defendant's prospective jurors would be drawn. *See State v. Fuhrmann* (1996), 278 Mont. 396, 409, 925 P.2d 1162, 1170, *overruled on other grounds, State v. Van Kirk*, 2001 MT 184, 306 Mont. 215, 32 P.3d 735. Here, the newspaper article concerning Pittman was not inflammatory. It summarized the charges against her, her allegations at the evidentiary hearing regarding the detention officer and her prior criminal record. The information in the article was based entirely on information contained in District Court documents and testimony from the evidentiary hearing. The newspaper article did not editorialize about Pittman's guilt or innocence. We conclude Pittman has failed to establish that the newspaper article was inflammatory.

¶20 Because *Hill* states the pretrial publicity test in the conjunctive--i.e., the news reports were inflammatory <u>and</u> they actually inflamed the prejudice of the community--both elements must be established in order to require a change of venue. *See, e.g., Northwest Pub. v. Montana Dept. of Labor and Industry, Unemployment Ins. Div., Contributions Bureau* (1993), 256 Mont. 360, 363, 846 P.2d 1030, 1032. Having determined that Pittman failed to satisfy the first element of the test, we need not address the second element. We hold the District Court did not abuse its discretion in denying Pittman's motion for a change of venue.

## ISSUE 2

¶21 Were Pittman's rights to a fair trial and due process of law denied because all the witnesses against her were members of law enforcement?

¶22 Pittman advances two lines of argument under this issue. Pointing out that the injuries sustained by the victims of her crimes would not support felony charges except for the fact that the victims were peace officers, she claims she was denied her right to due process and the "level playing field" guaranteed under the Confrontation Clause of the United States Constitution when lesser-included offenses were precluded because her victims were peace officers. She also claims she was deprived of her rights of due process and fair trial by the conduct of law enforcement personnel prior to trial, because King was present when she was interviewed by the Montana Division of Criminal Investigation in relation to other criminal charges and the State did not inform her in advance that he would be present.

¶23 Pittman did not raise her confrontation and due process argument in the District Court and, as a result, has waived appellate review of that claim. Section 46-20-104(2), MCA. Moreover, she advances no authority in support of her argument that the conduct of law enforcement personnel prior to trial violated her rights to due process and a fair trial, as is required for all appellate arguments under Rule 23(a)(4), M.R.App.P. For those reasons, we decline to address those arguments.

## ISSUE 3

¶24 Did the District Court abuse its discretion in admitting a videotape of Pittman at the detention center into evidence?

¶25 Relevant evidence is generally admissible. Rule 402, M.R.Evid. Relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice or by needless presentation of cumulative evidence. Rule 403, M.R.Evid. Our standard of review of a district court's evidentiary ruling is whether the district court has abused its discretion. *State v. McCaslin*, 2004 MT 212, ¶ 15, 322 Mont. 350, ¶ 15, 96 P.3d 722, ¶ 15 (citations omitted).

¶26 Pittman contends the videotape evidence was cumulative because the same law enforcement officers who appeared in the video testified at trial. She also contends the video was inflammatory and prejudicial to her.

¶27 The videotape clearly was instructive and corroborative. It presented the jury with the best evidence of whether Pittman committed three of the offenses with which the State charged her. The videotape allowed the jury to determine whether the officers were telling the truth about Pittman's conduct and was useful to aid the jury in evaluating Pittman's testimony that she could not remember biting Power, that she was not trying to hurt anyone, and that she was simply resisting arrest. On balance, we conclude the videotape did not constitute needless presentation of cumulative evidence. Moreover, probative evidence is often, if not always, prejudicial to a criminal defendant. *See State v. Southern*, 1999 MT 94, ¶ 66, 294 Mont. 225, ¶ 66, 980 P.2d 3, ¶ 66 (citation omitted). Given the probative value of the videotape, we cannot conclude its probity was substantially outweighed by any danger of unfair prejudice.

¶28    We hold the District Court did not abuse its discretion in admitting the videotape into evidence.

ISSUE 4

¶29    Did the District Court abuse its discretion in denying Pittman's request for a lesser-included offense instruction on resisting arrest?

¶30    We review jury instructions to determine whether the instructions as a whole fully and fairly instruct the jury on the applicable law.  A district court has broad discretion in formulating jury instructions, and our standard of review is whether the court abused that discretion.  *State v. German*, 2001 MT 156, ¶ 10, 306 Mont. 92, ¶ 10, 30 P.3d 360, ¶ 10 (citation omitted).

¶31    A criminal defendant is entitled to an instruction on a lesser-included offense when any evidence in the record would permit the jury to find the defendant guilty of the lesser and acquit her of the greater offense.  *See State v. Ostwald* (1979), 180 Mont. 530, 538, 591 P.2d 646, 651.  Resisting arrest occurs when one prevents or attempts to prevent a peace office from effecting an arrest.  Section 45-7-301, MCA.  Pittman already was under arrest when she engaged in the acts at the detention center which are the bases of the charges of assault on a police officer and attempted assault on a police officer.  Therefore, no evidence in the record would permit the jury to find her guilty of the lesser-included offense of resisting arrest and acquit her of either or both of the two felony offenses.

¶32    We hold the District Court did not abuse its discretion in denying Pittman's request for a lesser-included offense instruction on resisting arrest.

9

ISSUE 5

¶33    Is the evidence sufficient to sustain Pittman's convictions of assault on a peace officer and attempted assault on a peace officer?

¶34    The standard of review for the sufficiency of evidence on appeal of a criminal conviction is whether, when viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McCarthy*, 2004 MT 312, ¶ 46, 324 Mont. 1, ¶ 46, 101 P.3d 288, ¶ 46 (citation omitted).

¶35    Purposely or knowingly causing bodily injury to a peace officer constitutes assault on a peace officer. *See* § 45-5-210, MCA. Here, King was the victim in the charge of assault on a peace officer. He testified Pittman stood up from her chair and threw the chair at him, he deflected the chair with his right hand and it hit him in his torso and leg area. He also testified he experienced pain when Pittman hit him with the chair. An x-ray revealed that his finger was broken and he told the jury the injury was painful.

¶36    Attempted assault on a peace officer is the commission of any act which constitutes a material step toward the offense of assault on a peace officer by a person acting with the purpose to commit the offense of assault on a peace officer. *See* § 45-4-103, MCA. King testified that Pittman spit in Power's face and attempted to bite her. Power testified that, after the officers changed Pittman into the orange pants, Pittman "reared up," spit in her face and tried to bite her upper left arm. Power explained that, while Pittman bit her sweatshirt, Pittman did not contact her skin or cause an injury. Power's and King's testimony was

partially corroborated by the videotape, which showed Pittman lunging at Power's face and arm.

¶37    Viewing the evidence in a light most favorable to the prosecution, we conclude sufficient evidence supported Pittman's convictions of assault on a peace officer and attempted assault on a peace officer.

ISSUE 6

¶38    Did the District Court abuse its discretion in sentencing Pittman to prison instead of to the custody of the Department of Public Health and Human Services?

¶39    Section 46-14-101, MCA, requires the sentencing court to consider a defendant's mental disease or defect, using information gained from an examination of the defendant, in order to determine whether the defendant was, at the time she committed the offense, able to appreciate the criminality of her behavior or conform her behavior to the requirements of the law.  Pittman contends the District Court failed to properly consider the evaluation her expert, clinical psychologist Dr. F. Tom Peterson, conducted shortly before her sentencing hearing. She claims that, in light of Peterson's testimony, the court abused its discretion and erred in sentencing her to prison.

¶40    Peterson testified at the sentencing hearing.  He stated Pittman was mentally ill. According to Peterson, Pittman's mental illness resulted in a mental disorder involving impaired thinking and mood and substantial behavior impairment.  He opined that, at the time she committed the offenses of which she was convicted, she was not able to conform her behavior to the requirements of the law.  He recommended she receive medication,

11

psychotherapy and intensive substance abuse treatment to enable her to conform her conduct to the rules of society.

¶41 Dr. William Stratford, a psychiatrist, also examined Pittman, and testified on the State's behalf at her sentencing hearing. Stratford examined Pittman over a two-day period and reviewed records dating back to 1989 of her juvenile and adult criminal history and her psychiatric history. Stratford testified that Pittman suffers from a severe personality disorder and has a longstanding drug and alcohol abuse history. He opined that she had the capacity to act with knowledge and purpose at the time of the offenses. He further testified that, in his opinion, Pittman's ability to conform her conduct to the requirements of law was minimized due to voluntary ingestion of drugs and alcohol, in combination with "a florid personality disorder," rather than because of psychosis or mental disease. He recommended that the District Court sentence Pittman to the Montana Women's Prison and that she participate in a prison chemical dependency program, undergo mental health therapy and be medicated.

¶42 Pittman essentially argues that the District Court should have accepted Peterson's opinion instead of Stratford's. The weight and credibility of evidence are within the province of the finder of fact, whose determination we will not disturb on appeal. *State v. Gilmore*, 2004 MT 363, ¶ 18, 324 Mont. 488, ¶ 18, 104 P.3d 1051, ¶ 18. Based on those factors, the District Court accepted Stratford's evaluation of Pittman and rejected Peterson's. Because the court's resolution of the conflict between the two opinions is supported by the record, we will not disturb it. *See State v. Collier* (1996), 277 Mont. 46, 61, 919 P.2d 376, 386. We conclude the District Court did not abuse its discretion in sentencing Pittman to prison.

¶43    Affirmed.


                                        /S/ KARLA M. GRAY


We concur:


/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART