DA 13-0704

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 58

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

MICHAEL CLAUDE URZICEANU,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and For the County of Missoula, Cause No. DC 13-42
                    Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Julie Brown, Montana Legal Justice, PLLC; Missoula, Montana

       For Appellee:

       Timothy C. Fox, Montana Attorney General; Tammy A. Hinderman,
       Assistant Attorney General; Helena, Montana

       Kirsten H. Pabst, Missoula County Attorney; Andrew W. Paul, Deputy
       County Attorney; Missoula, Montana

Submitted on Briefs: January 7, 2015
             Decided: February 24, 2015

Filed:

_____
              Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Michael Claude Urziceanu appeals the Fourth Judicial District Court's denial of his motion to suppress. We restate the issue on appeal as whether Missoula County Sheriff's Department (MCSD) deputies violated Urziceanu's constitutional rights by entering his property to assist with a civil standby. We conclude that they did not, and we affirm Urziceanu's conviction.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2      On December 19, 2012, MCSD deputies accompanied Christine Robutka to a rural property located on Ellis Creek Road. Robutka had contacted MCSD and requested a civil standby while she removed her belongings from the property. A civil standby is an operation that MCSD routinely conducts as a service to the public; it entails deputies briefly accompanying the requesting party and keeping the peace should a dispute arise. Explaining her request, Robutka said that she had been sharing a residence on the property with two men—one of whom is Urziceanu—and that she was worried that the men might cause trouble when she tried to move out.

¶3      Before following Robutka to the property, deputies met with her at a nearby eatery. Sergeant David Ball, who later testified at Urziceanu's suppression hearing, spoke with Robutka. Robutka told Ball "stories about living with the males, her possessions being at the residence . . . and that she had been living with the two males for some time and had a right to be back there retrieving her property." Sergeant Ball was satisfied that Robutka was telling the truth about her connection to the property.

2

¶4 Robutka led MCSD deputies up Ellis Creek Road to a property that is fenced and marked with no trespassing signs. The property includes fifteen acres and a house that is located at the end of a 100-foot private driveway and is not visible from the road. Trailing Robutka, Sergeant Ball and other deputies in two MCSD vehicles drove halfway up the driveway and parked. Sergeant Ball testified that, upon stepping out of his vehicle, he saw a "glassed-in area, like a porch or a remodeled porch." Despite drapes hanging over some of the glass, Sergeant Ball saw "several marijuana plants in there in pots." Robutka walked up to the house, opened the front door, and entered, leaving the door open behind her. Through the open door, Sergeant Ball saw more marijuana plants. He took out his camera and took a picture. The record is not clear whether Robutka retrieved any items, but she came out of the house and she and the deputies left without incident.

¶5 Two days later, MCSD Detective Scott Newell—who also testified at Urziceanu's suppression hearing—interviewed Robutka. Robutka told Detective Newell that Urziceanu was growing marijuana at the Ellis Creek property.

¶6 Detective Newell sought a warrant to search the Ellis Creek property for marijuana. To establish probable cause, the warrant affidavit recounted Detective Newell's interview with Robutka, Sergeant Ball's observations during the civil standby, and Detective Newell's familiarity with Urziceanu's terms of release for another conviction for growing marijuana. A magistrate issued the warrant, and MCSD deputies executed the search on January 2, 2014. They seized multiple adult marijuana plants.

¶7 The State charged Urziceanu with violating § 45-9-110, MCA, which criminalizes the cultivation of marijuana. Urziceanu moved to suppress the evidence gathered from the December 19 civil standby and the January 2 search on the ground that, in each instance, the State violated his right to privacy and right to be free from unreasonable searches and seizures. The District Court held a hearing on the motion in which Sergeant Ball, Detective Newell, and Urziceanu testified. Urziceanu testified that Robutka had lived in the house for two weeks in September 2012 and had lived in a vehicle on the property for two weeks after that, but then had left. Urziceanu further testified that Robutka did not depart on good terms and did not have permission to be in the house or on the property.

¶8 A day after the hearing, the District Court issued an order that denied the motion to suppress. Urziceanu eventually pleaded guilty and was sentenced to a three-year suspended sentence, to run consecutively to a sentence that Urziceanu had received in another case. Urziceanu appeals the District Court's denial of the motion to suppress.

**STANDARDS OF REVIEW**

¶9 When reviewing a district court's denial of a motion to suppress based on its refusal to excise information from a warrant application, we review findings of fact for clear error and conclusions of law for correctness. *State v. Deshaw*, 2012 MT 284, ¶ 13, 367 Mont. 218, 291 P.3d 561. A finding of fact is clearly erroneous if the finding is not supported by substantial evidence, if the district court misapprehended the effect of the

evidence, or if we are convinced after reviewing the record that the district court has made a mistake. *State v. Phillips*, 2013 MT 317, ¶ 15, 372 Mont. 317, 312 P.3d 445.

¶10 When an application for a warrant contains only legally obtained evidence, we review a magistrate's issuance of a warrant to determine whether the application provided a substantial evidentiary basis for a determination of probable cause. *State v. Kuneff*, 1998 MT 287, ¶ 18, 291 Mont. 474, 970 P.2d 556. When an application for a warrant contains illegally obtained evidence, we conduct de novo review to determine whether probable cause existed to issue the warrant. *Kuneff*, ¶ 19.

## DISCUSSION

¶11 The United States Constitution and the Montana Constitution guarantee the individual right to be secure from unreasonable, warrantless searches and seizures. U.S. Const. amend. IV; Mont. Const. art. II, § 11. The Montana Constitution further provides that the individual right to privacy "shall not be infringed without the showing of a compelling state interest." Mont. Const. art. II, § 10. We interpret Article II, Sections 10 and 11 of the Montana Constitution to provide greater protection to individual rights than does the Fourth Amendment of the United States Constitution. *Deshaw*, ¶ 27.

¶12 Acknowledging that MCSD searched his residence and seized marijuana plants only after obtaining a warrant, Urziceanu challenges the inclusion of several pieces of evidence in the warrant application. He suggests that a magistrate could not properly consider these pieces of evidence in determining probable cause, thus rendering the

5

issuance of the warrant improper. The first piece of evidence Urziceanu challenges is the observation of marijuana plants during the December 19 civil standby.

¶13 The plain view doctrine holds that an officer who is in a place where she has a right to be need not divert her gaze from incriminating evidence. *See State v. Doyle*, 1998 MT 195, ¶ 11, 290 Mont. 287, 963 P.2d 1255. During the civil standby, the deputies saw the marijuana plants from halfway up Urziceanu's driveway. Urziceanu contends that the deputies had no right to be there because Urziceanu had an actual, reasonable expectation of privacy in the property, on which the deputies could not intrude without his permission or a lawfully obtained warrant.

¶14 The government does not infringe on a person's constitutional right to be secure from unreasonable searches and seizures if the government receives valid consent. *United States v. Matlock*, 415 U.S. 164, 165-66, 94 S. Ct. 988, 990 ("[T]he search of property, without a warrant and without probable cause, but with proper consent voluntarily given, is valid under the Fourth Amendment."). In *State v. Bullock*, 272 Mont. 361, 901 P.2d 61 (1995), we explained that, when a person takes steps to indicate "unmistakably that entry [onto the person's property] is not permitted, . . . entry by law enforcement officers requires permission or a warrant." *Bullock*, 272 Mont. at 284, 901 P.2d at 75-76 (citation omitted) (internal quotation marks omitted).

¶15 Given the posting and fencing of the Ellis Creek property, the State does not contend that Urziceanu consented to the public or the government driving up his

6

driveway.  Instead, the State argues that Robutka was a third party with authority to consent and that she did consent by requesting officers to accompany her to the property.

¶16    A third party with authority validly may consent to an intrusion upon a defendant's property.  *State v. Sorenson*, 180 Mont. 269, 275, 590 P.2d 136, 140 (1979).  Adequate authority to consent rests on common authority over the property, defined as

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*State v. McLees*, 2000 MT 6, ¶ 13, 298 Mont. 15, 994 P.2d 683 (quoting *Matlock*, 415 U.S. at 171 n. 7, 94 S. Ct. at 993 n. 7).  The Montana Constitution requires that a court reviewing an issue of third party consent determine—without deference to the officer at the scene—whether the third party had common authority.  *McLees*, ¶ 32 (distinguishing the United States Constitution, which, under *Illinois v. Rodriguez*, 497 U.S. 177, 188-89, 110 S. Ct. 2793, 2801 (1990), requires that an officer have only a reasonable belief about a third party's common authority).  The focus of this analysis is on what facts the officer was operating under at the time of the purported search or seizure.  *State v. Gilmore*, 2004 MT 363, ¶ 22, 324 Mont. 488, 104 P.3d 1051.

¶17    In *McLees*, we determined that the defendant's grandfather did not have common authority over the defendant's apartment.  *McLees*, ¶ 32.  This conclusion relied in part on the fact that, when the searching officer and the grandfather approached the apartment's front door, they found the door locked.  *McLees*, ¶ 5.  The grandfather,

7

lacking a key, had to lead the officer through the adjoining shop to gain access to the apartment. *McLees*, ¶ 5. By contrast, we determined in *Gilmore* that, based on what the officers knew at the time, a homeowner had common authority over a room in her house where the defendant slept. *Gilmore*, ¶¶ 22-23. This conclusion relied on the fact that, before the entry into the room, the homeowner told the officers that her boyfriend's belongings were stored in the room and that the defendant was not welcome in her house. *Gilmore*, ¶ 22.

¶18 At the suppression hearing, Sergeant Ball recounted the facts that were available to him to determine Robutka's authority. Sergeant Ball testified that Robutka told him about living on the Ellis Creek property with Urziceanu and another man, and said that she had items on the property and had a right to go back and retrieve them. Unlike in *McLees*, where the officer saw that the third party lacked a key, *McLees*, ¶ 5, there was no objective indication in this case that Robutka lacked access to the property.

¶19 Although the District Court did not specifically find that Robutka had access or control over the property for the limited purpose for which she requested the officers to enter, we apply the doctrine of implied findings. *State v. Wright*, 2001 MT 282, ¶ 9, 307 Mont. 349, 42 P.3d 753. The finding that Robutka had access or control is implicit in the District Court's ruling that the officers saw the marijuana plants "in plain view." Based on the substantial evidence in the record, such a finding is not clearly erroneous. Because a person with joint access permitted the officers to enter the driveway while she retrieved her belongings, the District Court properly concluded that the deputies lawfully saw the

8

marijuana plants in plain view. To the extent that Urziceanu's later testimony—even if believed—suggests that Robtuka did not have common authority, that testimony was not reasonably available to the officers when they responded to Robutka's request for assistance. *See Gilmore*, ¶ 22.

¶20 We hold that the deputies did not violate Urziceanu's constitutional rights when they entered the driveway to conduct the civil standby. Sergeant Ball had Robutka's permission to be halfway up the driveway, and that is the vantage from which he saw the marijuana plants. No basis exists for striking Sergeant Ball's observation from the warrant affidavit.

¶21 Urziceanu also argues that Robutka's statement to Detective Newell confirming the existence of the marijuana plants does not meet the standard for informant tips under *State v. Reesman*, 2000 MT 243, 301 Mont. 408, 10 P.3d 83. He thus urges that the Court excise Robutka's statement from the warrant application. But, with or without Robutka's statement, the plain view observation of marijuana plants by MCSD deputies provided probable cause, and the warrant for the January 2 search therefore was proper. *See Deshaw*, ¶ 21 (explaining that an officer who had "personally viewed [the] illegal marijuana grow operation" had "all of the probable cause he needed" to obtain a search warrant). We decline to reach Urziceanu's argument that Robutka was not a reliable informant.

## CONCLUSION

¶22    We affirm the District Court's denial of Urziceanu's motion to suppress and his resulting conviction.

/S/ BETH BAKER

We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA