DA 11-0719

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 284

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

WILLIAM ORVILLE DESHAW, III,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
In and For the County of Blaine, Cause No. DC-2011-02
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Carl B. Jensen, Jr., Attorney at Law, Great Falls, Montana

      For Appellee:

         Steve Bullock, Montana Attorney General, Jonathan M. Krauss,
Assistant Attorney General, Helena, Montana

         Donald Ranstrom, Blaine County Attorney, Valerie M. Ovitt, Deputy
Blaine County Attorney, Chinook, Montana

Submitted on Briefs:  June 12, 2012

Decided:  December 11, 2012

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    The District Court for the Seventeenth Judicial District, Blaine County, sentenced Orville William Deshaw, III, to a three-year deferred imposition of sentence upon Deshaw's plea of guilty to the felony offense of Criminal Possession with Intent to Distribute. Deshaw appeals the District Court's Order of Judgment and Sentence. We affirm.

¶2    We address the following issue on appeal: Whether the District Court erred in denying Deshaw's Motion to Suppress and Dismiss.

**Factual and Procedural Background**

¶3    Sometime during the week of April 19, 2010, Scott and Heather DePriest of Chinook, Montana, reported to Blaine County Undersheriff Pat Pyette that the DePriest's neighbor may be engaged in illegal drug activity. The DePriests reported that the neighboring residence received a large amount of short-term traffic, and that a young girl who resides at the neighboring residence told Scott DePriest (Scott) that she was not allowed to enter the basement of the residence because that is where her father keeps his plants.

¶4    Undersheriff Pyette had known the DePriests for a long time. Because he found the DePriests and their report to be reliable, Undersheriff Pyette referred their report to Tri-Agency Safe Trails Task Force Agent Joe Winfield. After receiving the report, Agent Winfield contacted the Montana Department of Health and Human Services (DPHHS) and verified that Deshaw occupied the residence and that he was a medical marijuana

patient. Agent Winfield also learned, however, that Deshaw was not registered as a medical marijuana caregiver.

¶5 Agent Winfield went to Deshaw's residence to conduct an investigation. When Deshaw answered the door, Agent Winfield identified himself as an agent with the drug task force and stated that he understood that Deshaw was a medical marijuana patient and that he was growing marijuana in his basement. Deshaw confirmed this information, and also stated that he had submitted the necessary paperwork to become a medical marijuana caregiver.

¶6 Agent Winfield asked if he could inspect Deshaw's grow operation to ensure that Deshaw was in compliance with the medical marijuana laws. Deshaw allowed Agent Winfield to enter the residence, introduced Agent Winfield to Jennifer, Deshaw's wife, and provided Agent Winfield with a copy of his medical marijuana card. In addition, Jennifer provided Agent Winfield with a copy of her doctor's recommendation for a medical marijuana card, but she stated that she had not yet received her card in the mail.

¶7 Deshaw led Agent Winfield to the basement of the residence where Deshaw had his grow operation. Agent Winfield observed 11 or 12 mature marijuana plants in one room, and approximately 12 adolescent marijuana plants in a plastic bin in another room. He also observed two black trays containing approximately 20 starter marijuana plants.

¶8 Agent Winfield determined that Deshaw was not in compliance with the medical marijuana laws because he was not able to provide proof that he was a medical marijuana caregiver, nor was he able to provide proof of who his patients were. Consequently, Agent Winfield obtained a search warrant for Deshaw's residence.

3

¶9 During the course of the search pursuant to the warrant, Agent Winfield seized 23 marijuana plants and approximately two ounces of marijuana, leaving Deshaw with the six marijuana plants and one ounce of marijuana he was legally allowed to possess as a medical marijuana patient cardholder. In addition, Agent Winfield seized two pans of marijuana cookies weighing 673.39 grams, and a pan of marijuana brownies weighing 491.89 grams. Agent Winfield also seized other marijuana products and paraphernalia. Following the search, Agent Winfield again contacted DPHHS and verified that Deshaw had only a current medical marijuana patient card and not a caregiver card, and that Jennifer was not listed as either a medical marijuana patient cardholder or a medical marijuana caregiver.

¶10 On February 25, 2011, Deshaw was charged by Information with Criminal Possession with Intent to Distribute, a felony, in violation of § 45-9-103, MCA. Deshaw filed a Motion to Suppress and Dismiss on May 26, 2011, arguing, among other things, that the initial search of his home "was not done through a valid exception to the warrant requirement and consent was coerced under the color of authority." Deshaw also contended that the application for a search warrant did not adequately establish the reliability and credibility of the informant whose statements provided the basis for the request for a search warrant. The District Court denied Deshaw's motion concluding that the evidence showed that Deshaw's consent to the inspection "was freely and voluntarily given and that it was uncontaminated by any express or implied duress or coercion and free of any trickery or deceit." The District Court also rejected Deshaw's contentions that a warrantless search of a home based on consent requires probable cause to establish

4

a recognized exception to the warrant requirement, and that the search warrant in this case lacked probable cause due to alleged problems with the reliability and credibility of the information provided by the citizen informants.

¶11 Thereafter, Deshaw entered into a plea agreement with the State wherein he agreed to plead guilty to the possession charge, but reserved his right to appeal the denial of his Motion to Suppress and Dismiss. The District Court deferred imposition of Deshaw's sentence for three years, and ordered him to pay a fine of $4,000.

¶12 Deshaw appeals the District Court's judgment and sentence.

**Standard of Review**

¶13 We review a district court's decision to grant or deny a motion to suppress to determine whether that court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Ellis*, 2009 MT 192, ¶ 20, 351 Mont. 95, 210 P.3d 144 (citing *State v. Lewis*, 2007 MT 295, ¶ 17, 340 Mont. 10, 171 P.3d 731; *State v. DeWitt*, 2004 MT 317, ¶ 21, 324 Mont. 39, 101 P.3d 277). A district court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this court with a definite and firm conviction that a mistake has been committed. *Ellis*, ¶ 20 (citing *Lewis*, ¶ 17; *State v. Lanegan*, 2004 MT 134, ¶ 10, 321 Mont. 349, 91 P.3d 578).

¶14 We further review a district court's denial of a motion to suppress to determine whether the court's interpretation and application of the law are correct. *State v.*

5

*Martinez*, 2003 MT 65, ¶ 19, 314 Mont. 434, 67 P.3d 207 (citing *Hauge v. District Court*, 2001 MT 255, ¶ 11, 307 Mont. 195, 36 P.3d 947).

**Discussion**

¶15     *Whether the District Court erred in denying Deshaw's Motion to Suppress and Dismiss.*

¶16     Deshaw argues that Agent Winfield did not have probable cause to believe a crime was occurring, thus there was no basis for Agent Winfield to contact Deshaw and request to search his residence. Deshaw also argues that Agent Winfield used the color of his authority to pressure Deshaw into consenting to a search of his residence, thereby invalidating Deshaw's consent to search.

¶17     The State argues that, contrary to Deshaw's contentions, consent, as an exception to the warrant requirement, does not require probable cause. The State also argues that Deshaw has not overcome the District Court's findings that the citizen informants in this case were reliable and trustworthy, and that Agent Winfield's initial entry into Deshaw's residence was made with Deshaw's knowing and voluntary consent.

¶18     There are essentially three components to Deshaw's argument: (1) the reliability of the informant; (2) the validity of the consent to search; and (3) the validity of the search warrant. We will address each of these components in turn.

*1. Reliability of the informant*

¶19     Deshaw contends that the information his neighbor, Scott, provided to law enforcement officers was not reliable. Deshaw further contends that since this information was not reliable, Agent Winfield did not have probable cause to believe a

crime was occurring, thus there was no basis for Agent Winfield to contact Deshaw and request to search his residence. According to Deshaw, without sufficient evidence to support the initial contact, the evidence that was used as a basis for the search warrant was "tainted," hence the results of that subsequent search should have been excluded as "fruits of the poisonous tree."

¶20   As we indicate later in this Opinion, Agent Winfield did not need probable cause to request to search Deshaw's residence. Nevertheless, Agent Winfield did not pick a house at random and ask to search it. He had received information from Scott that raised his suspicions that criminal activity might be occurring at Deshaw's residence. Agent Winfield would later use this information to support his Application for Search Warrant.

¶21   If the applicant for a search warrant utilizes information from an informant to establish probable cause, this Court has developed various rules under which the issuing magistrate assesses the informant's information and reliability. Since Scott was identified in the Application for Search Warrant, and since Deshaw maintains that Scott was not reliable thereby tainting both the consent to search and the search warrant, in the interest of a complete discussion and disposition of this argument, we set out those rules here. That said, it should be kept in mind that by the time Agent Winfield applied for the search warrant in this case, he had personally viewed Deshaw's illegal marijuana grow operation. Accordingly, Agent Winfield had all of the probable cause he needed for his search warrant without the necessity for Scott's input. Thus, concerns about Scott's reliability are largely academic.

¶22 With the foregoing in mind, we note that this Court has adopted a three-part analysis to evaluate the reliability of an informant's tip. *State v. Tucker*, 2008 MT 273, ¶¶ 20-24, 345 Mont. 237, 190 P.3d 1080 (citing *State v. Reesman,* 2000 MT 243, 301 Mont. 408, 10 P.3d 83, *overruled in part by State v. Barnaby*, 2006 MT 203, ¶¶ 41-42, 333 Mont. 220, 142 P.3d 809). First, we determine whether the informant is anonymous or whether he identified himself to law enforcement thereby exposing him to criminal and civil liability if the report is false. *Tucker*, ¶ 20; *Martinez*, ¶ 32. If the informant is anonymous, corroboration of the informant's information through other sources is necessary. *State v. Palmer,* 2003 MT 129, ¶ 17, 316 Mont. 46, 68 P.3d 809 (citing *Reesman*, ¶ 28). In this case, not only did Scott identify himself to law enforcement, but Scott is personally named in the Application for Search Warrant.

¶23 Second, we determine whether the report is based on the personal observations of the informant or upon hearsay. *Tucker*, ¶ 21. Here, Scott related that he had personally observed that the neighboring residence received a large amount of short-term traffic, and that a young girl who resides at the neighboring residence told Scott that she was not allowed to enter the basement of the residence because that is where her father keeps his plants.

¶24 Third, we determine whether the informant was reliable. *Tucker*, ¶ 24. We stated in *Tucker*, that there are three categories of informants for the purposes of determining reliability: (1) informants who make an admission against interest; (2) confidential informants; and (3) concerned citizens. *Tucker*, ¶ 24 (citing *Palmer*, ¶ 18). When an informant makes an unequivocal admission against interest, further corroboration is not

8

required. *Tucker*, ¶ 24 (citing *Palmer*, ¶ 18). " 'Admissions of crime like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search.' " *Palmer*, ¶ 18 (quoting *Reesman*, ¶ 33).

¶25  As for the latter two categories, we distinguish the concerned citizen who reports a chance encounter with crime as a civic duty from the confidential informant who works with police by reporting on the illegal activities of others. *Martinez*, ¶ 34 (citing *Reesman*, ¶ 32). The citizen informant is presumed to be reliable. This, however, is not a per se rule; rather, the citizen informant's information is analyzed by reference to the nature of the circumstances under which the information became known. *See State v. Valley*, 252 Mont. 489, 493, 830 P.2d 1255, 1258 (1992); *Palmer*, ¶ 18. A confidential informant's information is judged more stringently. *See Tucker*, ¶ 24.

¶26  In this case, Scott was not an anonymous, confidential informant. As already indicated, Scott was identified by name in the Application for Search Warrant. Furthermore, the information Scott related to law enforcement officers—that he had personally observed that the neighboring residence received a large amount of short-term traffic, and that a young girl who resides at the neighboring residence told him that she was not allowed to enter the basement of the residence because that is where her father keeps his plants—demonstrated a sufficient degree of the nature of the circumstances under which the incriminating information became known, to categorize Scott as a concerned citizen motivated by good citizenship. As such, the information Scott provided was reliable.

*2. Validity of the consent to search*

9

¶27 The Fourth Amendment to the United States Constitution and Article II, § 11 of the Montana Constitution prohibit unreasonable searches and seizures. In addition, the Montana Constitution affords its citizens additional privacy protections. Mont. Const. art. II, § 10. Thus, Montanans enjoy a greater right to privacy exceeding even that provided by the federal constitution. *Ellis*, ¶ 22 (citing *State v. Burns*, 253 Mont. 37, 40, 830 P.2d 1318, 1320 (1992)).

¶28 This Court has repeatedly held that warrantless searches of an individual's home are per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *Ellis*, ¶ 24 (citing *State v. McLees*, 2000 MT 6, ¶ 10, 298 Mont. 15, 994 P.2d 683). These exceptions include: consent, freely and voluntarily given; a search incident to a lawful arrest; and exigent circumstances coupled with probable cause. *Ellis*, ¶ 73 (citing *State v. Bieber*, 2007 MT 262, ¶ 29, 339 Mont. 309, 170 P.3d 444; *State v. Hardaway*, 2001 MT 252, ¶ 36, 307 Mont. 139, 36 P.3d 900; *State v. Stone*, 2004 MT 151, ¶ 18, 321 Mont. 489, 92 P.3d 1178).

¶29 The State has the burden to show that consent was given by the defendant. *State v. Lacey*, 2009 MT 62, ¶ 37, 349 Mont. 371, 204 P.3d 1192 (citing *McLees*, ¶ 10). Furthermore, consent must be given voluntarily, uncontaminated by any duress or coercion, express or implied. *State v. Rushton*, 264 Mont. 248, 258, 870 P.2d 1355, 1361 (1994) (citing *State v. Kim*, 239 Mont. 189, 196-97, 779 P.2d 512, 516-17 (1989); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 2045 (1973)).

¶30 Contrary to Deshaw's contentions, Agent Winfield did not need probable cause to ask to search Deshaw's residence. In addition, Deshaw has not cited to any authority that

a warrantless search of a home requires both probable cause and consent. We have consistently held that the appellant bears the burden of establishing error on appeal. *State v. Buck*, 2006 MT 81, ¶ 30, 331 Mont. 517, 134 P.3d 53 (citing *State v. Aakre*, 2002 MT 101, ¶ 43, 309 Mont. 403, 46 P.3d 648). In this case, we agree with the State's assertion that consent obviates the need for a probable cause determination, and a search based on a knowing and voluntary consent is legal as an exception to the warrant requirement, without more.

¶31 Here, even before Agent Winfield asked to enter Deshaw's home, Agent Winfield independently verified through DPHHS that Deshaw was a medical marijuana patient cardholder, but not a medical marijuana caregiver. In addition, Deshaw freely admitted to Agent Winfield that he was a medical marijuana patient cardholder, that he was growing marijuana plants in his basement, and that he had filled out the necessary paperwork to become a caregiver. When Agent Winfield asked Deshaw if he could see his grow operation, not only did Deshaw consent to the search, but he personally guided Agent Winfield to the basement where Deshaw was growing his marijuana plants. Moreover, in the information he submitted for the presentence investigation report, Deshaw admitted that he "allowed officers to view my grow room *willingly*" (emphasis added). Thus, as the State pointed out in its brief on appeal, Deshaw's consent to Agent Winfield's inspection of Deshaw's marijuana grow operation was freely and voluntarily given, uncontaminated by duress or coercion, and free of any trickery or deceit.

¶32 Therefore, we conclude that the District Court's findings regarding Deshaw's consent to the initial search of his home are supported by substantial credible evidence and are not clearly erroneous.

### 3. Validity of the search warrant

¶33 An application for a search warrant must state facts sufficient to show probable cause to believe that an offense has been committed and that evidence of the crime may be found in the place to be searched. *Tucker*, ¶ 16 (citing § 46-5-221, MCA; *Barnaby*, ¶ 30; *Reesman*, ¶ 24). To evaluate whether probable cause supported the issuance of a warrant, we have adopted the "totality of the circumstances" test from *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). *Tucker*, ¶ 16 (citing *State v. Zito*, 2006 MT 211, ¶ 7, 333 Mont. 312, 143 P.3d 108; *Barnaby*, ¶ 29). Under this test, the issuing judicial officer "must make a practical, common sense determination, given all the evidence contained in the application for a search warrant, whether a fair probability exists that contraband or evidence of a crime will be found in a particular place." *Tucker*, ¶ 16 (citing *Gates*, 462 U.S. at 238, 103 S. Ct. at 2332).

¶34 We stated in *Tucker* that

> [a] determination of probable cause does not require facts sufficient to make a showing of criminal activity, rather, the issuing judicial officer must only determine that there exists a *probability* of criminal activity. Probable cause must be determined solely from the information contained within the four corners of the search warrant application.

*Tucker*, ¶ 17 (emphasis added and internal citations omitted). Hence, it is ultimately our function as a reviewing court to ensure that the issuing judicial officer had a substantial basis to determine that probable cause existed. *Tucker*, ¶ 17.

¶35 In this case, the Application for Search Warrant was supported by the statements of Deshaw's neighbor, Scott, which we have already deemed reliable, and by Agent Winfield's corroborating information from DPHHS that Deshaw resided in the residence in question and that Deshaw is a medical marijuana patient cardholder, but not a medical marijuana caregiver. The Application for Search Warrant was also supported by Agent Winfield's own observations during a lawful prior search of Deshaw's residence. In that prior search, Agent Winfield personally observed more than 40 marijuana plants in various stages of growth, far more than the six plants Deshaw was allowed to possess as a medical marijuana patient cardholder.

¶36 Therefore, we conclude that the District Court's findings regarding the validity of the search warrant are supported by substantial credible evidence and are not clearly erroneous.

**Conclusion**

¶37 Because we deem the citizen informant's information to be reliable, Deshaw's consent to search freely and voluntarily given, and the search warrant to be valid, we hold that the District Court did not err in denying Deshaw's Motion to Suppress and Dismiss.

¶38 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BETH BAKER

13