FILED

February 23 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0403

DA 15-0403

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 42

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

BRADLEY ROBERT KANT,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DC 15-06
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Karl Knuchel, Shena Roath, Karl Knuchel, P.C., Livingston, Montana

      For Appellee:

        Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

        Bruce Becker, Park County Attorney, Kathleen Carrick, Deputy Park
County Attorney, Livingston, Montana

Submitted on Briefs:  January 6, 2016

Decided:  February 23, 2016

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court..

¶1 Bradley Kant was arrested and charged with three drug-related criminal charges, two of which were felonies. The charges were brought following a warranted search of Kant's home and the seizure of 67 live marijuana plants and numerous miscellaneous paraphernalia. Kant appeals the Sixth Judicial District Court's denial of his combined motion to suppress and dismiss. We affirm.

## ISSUE

¶2 A restatement of the issue on appeal is:

¶3 Did the District Court err in denying Kant's motion to suppress and dismiss?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 During 2010 and 2011, Bradley Kant and his wife, Crystal, held registered caregiver's licenses under the Montana Marijuana Act authorizing them to grow and distribute marijuana in accordance with then-applicable statutes and regulations. Upon expiration of their licenses, they failed to renew them but continued growing and distributing marijuana.

¶5 In 2012, Detective Tim Barnes, an acting detective for the Park County Sheriff's Office and the Missouri River Task Force, executed a search warrant on a Livingston, Montana home and seized numerous marijuana plants and arrested one individual. This individual informed Barnes that he had gotten his original plants from his neighbor, Brad Kant, who was also growing numerous plants in his home.

¶6 On January 5, 2015, Barnes was informed by a separate confidential source (CS) that Crystal was growing multiple marijuana plants in her home and was delivering

marijuana to Vicki Jefferies' home every Wednesday at approximately 7:00 p.m. The CS claimed that Jefferies in turn supplied Mark Harrison with marijuana. Mark Harrison was the CS's roommate at that time. The CS provided Barnes with cellphone number, address, and vehicle information about Crystal, Jefferies, and Harrison. Additionally, the CS made statements against self-interest by admitting to smoking marijuana with Jefferies and trading prescription drugs to Jefferies for marijuana.

¶7     On January 14, 2015, Barnes submitted an application for a search warrant to conduct a search of the Kants' residence. Among other things, Barnes asserted in the application that on Wednesday, January 7, 2015, at 6:43 p.m., a vehicle bearing a license plate registered to Kant was seen arriving at Jefferies' home. A single unidentified occupant exited the vehicle and entered the home. Barnes also referenced the 2012 tip that Kant was then growing marijuana in his home. On January 9, Barnes interviewed a Livingston Police Officer who lives near Kant. The officer reported that during the hot summer months, a strong odor of fresh marijuana can be detected outside of the Kants' home. The magistrate granted the warrant and on January 16, 2015, Barnes and another detective executed it. The Kants were cooperative and the detectives seized 67 plants, 12 pounds of prepared product, and multiple items of paraphernalia for growing and distributing.

¶8     On February 3, 2015, the Park County Deputy County Attorney filed an Information against Bradley and Crystal Kant asserting the following criminal offenses: criminal production or manufacture of dangerous drugs, a felony; criminal possession with intent to distribute dangerous drugs, a felony; and criminal possession of drug

paraphernalia, a misdemeanor. On February 17, 2015, Kant made his initial appearance and entered a plea of not guilty. On February 25, 2015, Kant moved to suppress all evidence seized during the search of his residence on the grounds that Barnes' application for the warrant lacked sufficient facts to establish probable cause that the Kants' home contained drugs or drug-related evidence. Kant sought dismissal of the action against him. The State opposed the motion.

¶9      On April 7, 2015, the District Court denied Kant's suppression motion. On June 15, 2015, Kant entered into a plea agreement under which charges against Crystal were dismissed, and he pled guilty to criminal possession with intent to distribute dangerous drugs. Kant reserved the right to appeal the denial of his suppression motion, and the State agreed to dismiss the remaining charges. Kant was sentenced to 5 years to the Department of Corrections, all suspended, subject to a fine and other conditions.

¶10     Kant filed a timely appeal.

### STANDARD OF REVIEW

¶11     The grant or denial of a motion to dismiss in a criminal proceeding is a question of law which we review de novo to determine whether the district court's conclusion of law is correct. *State v. Willis*, 2008 MT 293, ¶ 11, 345 Mont. 402, 192 P.3d 691.

¶12     We review a district court's ruling on a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Deshaw*, 2012 MT 284, ¶ 13, 367 Mont. 218, 291 P.3d 561.

4

¶13    This Court's function as a reviewing court is to ensure that the magistrate or the lower court had a "substantial basis" to determine that probable cause existed. A magistrate's determination that probable cause exists will be paid great deference and every reasonable inference possible will be drawn to support that determination. *State v. Rinehart*, 262 Mont. 204, 211, 864 P.2d 1219, 1223 (1993) (internal citations omitted); *State v. Reesman*, 2000 MT 243, ¶ 19, 301 Mont. 408, 10 P.3d 83 (overruled in part on other grounds by *State v. Barnaby*, 2006 MT 203, ¶ 42, 333 Mont. 220, 143 P.3d 809 (Cotter, Nelson, JJ., dissenting)).

## DISCUSSION

¶14    *Did the District Court err in denying Kant's combined motion to suppress and dismiss?*

¶15    Kant presents several arguments on appeal. He argues that the District Court (1) misconstrued and misapplied *State v. Reesman* and *State v. Barnaby*; (2) erroneously ruled on the issue of staleness of certain evidence; (3) incorrectly accorded the magistrate too much inferential latitude; and (4) erroneously denied his motions to suppress and dismiss.

¶16    In *Reesman*, we addressed the sufficiency of the application for a search warrant employing the "totality of the circumstances" standard set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). We reviewed years of case law following the adoption of the *Gates* standard and observed that "certain indelible threshold rules have emerged." *Reesman*, ¶ 27. Relying on these rules, we compiled a three-prong test to determine whether probable cause exists for the issuance of a search warrant:

(1)     Was the informant anonymous or was the information provided hearsay?  If so, independent corroboration of the information is required;

(2)     If the informant is not anonymous, was the information provided based upon personal observation of criminal activity or was the information hearsay?  If hearsay, independent corroboration is required; and

(3)     If the information from a non-anonymous informant was gathered by personal observation of criminal activity, is the informant reliable?

*Reesman*, ¶¶ 28-31.  We further explained that under this standard, the court reviewing an application for a warrant "evaluates the facts asserted within the four corners of the application and makes a practical, common-sense decision as to whether there is a fair probability that incriminating items will be found in the place to which entry is sought." *Reesman*, ¶ 24.

¶17     In *Barnaby*, the Court "deviate[d] slightly" from *Reesman's* "strict rules requiring independent police corroboration" when it determined that the "critical question when evaluating probable cause is not whether an individual report meets the requirements of a particular test, but whether the application as a whole states sufficient facts to support a determination of probable cause."  *Barnaby*, ¶¶ 39-41.  Kant argues that *Barnaby* wrongly relaxed the *Reesman* test.

¶18     Kant asserts that the District Court erroneously implied that *Barnaby* overruled *Reesman*.  However, the *Barnaby* Court specifically admonished "police officers to corroborate independently information from sources of questionable reliability." *Barnaby*, ¶ 42.  Kant claims that the only information contained in the warrant application actually corroborated by Barnes was Crystal's cellphone number and Jefferies' and Harrison's address and vehicle information.  In other words, he complains

6

that the District Court's application of *Barnaby* resulted in the court's failure to properly analyze the warrant application contents under *Reesman*.

¶19     Additionally, Kant challenges the District Court's acceptance of or reliance on stale information contained in the warrant application, *i.e.*, the Livingston police officer's comment that summer temperatures caused the smell of marijuana to be detectable near Kant's home, and a statement by an arrestee in June 2012 that he had gotten his marijuana plants from Kant.  Kant contends that this stale information was insufficient to corroborate other information contained in the application and should have been disregarded.

¶20     Kant also argues that the magistrate erroneously inferred the existence of certain facts from the application for the search warrant, when the application itself did not categorically assert these facts.  Specifically, he maintains that the magistrate inferred from the application that:  (1) the CS had "first-hand" knowledge of the Kants' criminal activity based on personal observation; (2) it was Barnes himself who observed a single occupant exiting Kant's truck at Jefferies' house; and (3) the marijuana being supplied to Harrison by Jefferies was marijuana grown and distributed by the Kants.  He maintains that the magistrate was required to rely solely on the information contained within the four corners of the search warrant application and supporting documentation in determining whether probable cause exists, but that she instead engaged in unsupported inferences to justify the issuance of the search warrant.

¶21     We first address Kant's complaint that a neighbor's June 2012 claim that he obtained marijuana plants from Kant, and Officer Leonard's claims that during the hot

7

summer months, the scent of fresh marijuana was evident near the Kants' home, were too stale to be considered. As we are not basing our decision on either of these reports, we need not address them further.

¶22 Reviewing the remaining information included in the application, we analyze it under *Reesman* and *Barnaby*. In his affidavit, Barnes stated that the confidential source who provided information about Crystal, Jefferies, and Harrison was "known to law enforcement." As such, the CS was not anonymous, as addressed in the first prong of the *Reesman* test. Under the second prong, we ask whether the CS's information was based on his or her personal observation of the criminal activity or on hearsay. The affidavit provided little information about the CS. We do not know how the CS was "known to law enforcement," whether the CS had provided reliable information previously, or how the CS discovered the information supplied to Barnes. Under prong two of *Reesman*, without this information, Barnes was required to independently corroborate the information provided.

¶23 While some of the language of the application is less than clear, reasonable and acceptable extrapolations may nonetheless be made. After receiving all of the CS's information, Barnes independently, through personal surveillance or review of law enforcement records, corroborated what the CS had told him, including the phone number, addresses, and vehicle registration information for Crystal, Jefferies, and Harrison. We note that while Barnes did not expressly identify himself in his affidavit as the person who observed Kant's car at Jefferies' residence on the expected day and time, he did not identify anyone else as the surveillant, unlike the remainder of his application

8

in which he specifically identified each source of the information obtained. Based upon Barnes' statement that he conducted personal surveillance while corroborating the CS's information, it is reasonable to conclude from a "practical and common-sense" review of the application that Barnes was the surveillant. His failure to affirmatively so state could have been an oversight or the result of poorly drafted language, but we conclude it is not fatal. Because we conclude that Barnes corroborated the CS's information, we need not consider the remaining prongs of the *Reesman* test except to note that the CS's admissions against interest further support a finding of CS reliability under the third prong of the test. For these reasons, we conclude that the application satisfies the *Reesman* test. Having determined that the warrant application satisfies the stricter *Reesman* test, we need not engage in further analysis under *Barnaby*.

¶24 As noted above, we are tasked with ensuring that the magistrate had a "substantial basis" to determine there was probable cause for the issuance of the warrant. We will pay the magistrate's determination great deference and every reasonable inference will be drawn to support that determination. *Rinehart*, 262 Mont. at 211, 864 P.2d at 1223. Moreover, probable cause does not require facts sufficient to show criminal activity, but rather requires a determination that there exists a probability of criminal activity. *Barnaby*, ¶ 30. We conclude that the magistrate had a substantial basis for concluding there was a probability of criminal activity, and that the District Court did not err in denying Kant's suppression motion.

9

**CONCLUSION**

¶25    For the foregoing reasons, we affirm the District Court's denial of Kant's motion to suppress and dismiss.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER

Justice James Jeremiah Shea dissents.

¶26    I dissent from the majority's conclusion that the search warrant application contained probable cause to search Kant's residence.  I would reverse the District Court's order denying Kant's motion to suppress evidence of the marijuana plants and drug paraphernalia found at Kant's residence on the ground that the warrant application did not demonstrate sufficient independent corroboration of the CS's tip.

¶27    As the majority recognizes, the CS's tip falls under the second prong of the *Reesman* test for determining probable cause: the informant was not anonymous, and the information provided was hearsay, so independent corroboration was required.  Opinion, ¶ 22.  The majority concludes that the following facts constituted sufficient independent corroboration to warrant a finding of probable cause to search the Kants' home:  the CS provided Crystal's phone number and Jefferies' and Harrison's addresses and vehicle information; and the CS stated that Crystal brings marijuana to Jefferies' home every Wednesday at around 7:00 p.m., and Barnes observed an unidentified person emerge

from a vehicle registered to Kant enter Jefferies' residence on a Wednesday at 6:43 pm.[1]

Opinion, ¶ 23. For the reasons discussed below, I respectfully disagree with my colleagues that this constitutes sufficient independent corroboration.

¶28 In *State v. Griggs*, 2001 MT 211, ¶ 40, 306 Mont. 366, 34 P.3d 101, we held:

> The focus of a court in reviewing [a search warrant application] that relies on corroboration of non-criminal activity is the *degree of suspicion* that attaches to particular types of corroborated *non-criminal acts* and whether the informant provides details which are not easily obtained. The purpose of the inquiry is to determine if the informer's statements regarding non-incriminatory facts indicate familiarity with the implicated individual or the alleged criminal activity that would allow an inference that the informer's allegations of criminal activity are reliable.

(Emphasis in original). The warrant application in this case does not indicate how the CS obtained information that Crystal was growing marijuana at her residence or supplying marijuana to Jefferies. Only two of the facts corroborated by Barnes relate to the Kants: (1) Crystal's cell phone number, and (2) the vehicle from which the unidentified person emerged at Jefferies' house was registered to Kant. The application does not allege that the CS was "familiar" with the Kants or, for that matter, that the CS ever even interacted with the Kants.

¶29 "[C]orroboration must consist of more than merely innocent, public information." *State v. Tackitt*, 2003 MT 81, ¶ 34, 315 Mont. 59, 67 P.3d 295 (citing *Griggs*, ¶ 50). Apparently, none of the majority has been party to a group text, but there are myriad innocent ways that the CS could have obtained Crystal's cell phone number from any

---

[1] Although the warrant application does not identify Barnes as being the surveillant of the unidentified person, I agree with the majority that "it is reasonable to conclude . . . that Barnes was the surveillant." Opinion, ¶ 23.

number of people, including Jefferies, without ever interacting with Crystal in any manner, legal or illegal. The fact that the CS had Crystal's cell phone number bears no weight on the CS's reliability regarding a marijuana grow operation in Crystal's home. Likewise, Barnes' corroboration of Jefferies' and Harrison's addresses and vehicle information does not lend weight to the reliability of the CS's tip that Crystal was growing and distributing marijuana. According to the CS, she and Harrison are roommates; so as far as that information goes, the corroboration consisted of the CS's knowledge of her own address. More to the point, the information regarding Jefferies' and Harrison's addresses and vehicle information bears no relation to the Kants.

¶30    I also would not find the CS's reliability bolstered by her admission to using drugs *with Jefferies* and trading prescription drugs *with Jefferies* in exchange for marijuana. While this might bolster the CS's credibility if the goal was to search Jefferies' home, none of the CS's self-incriminating admissions were related to the crime at issue in this case or implicated the CS in any way into the investigation of the Kants.

¶31    I also must disagree with the majority's conclusion that Barnes' observation of an unidentified individual driving Kant's vehicle to Jefferies' house supports a finding of probable cause to search the Kants' residence. The suspicion that results from police corroboration of otherwise innocent information "must reveal a pattern of human behavior associated with the alleged criminal activity, or a particular activity necessary to carry out the alleged criminal activity, or activities which, when viewed as a whole, are consistent with the alleged criminal activity." *Griggs*, ¶ 46. According to the warrant application, the CS "stated that Crystal Kant brings marijuana to Vicki Jefferies every

12

Wednesday around 7:00 pm." This was corroborated by Barnes' observation that "on Wednesday, January 7, 2015, at 6:43 p.m., a vehicle bearing a license plate registered to Kant was seen arriving at Jefferies' home[,]" and "[a] single unidentified occupant exited the vehicle and entered the home." Opinion, ¶ 7. There is no indication that the individual emerging from the vehicle was Crystal, or even that the individual was female. Nothing in the warrant application indicates that the unidentified individual was carrying anything into the house, let alone a suspicious package. Nor does the application state how long the unidentified individual remained at Jefferies' residence, whether he or she emerged empty-handed after entering with a package, or whether there were other individuals at Jefferies' home at the time.

¶32 If the unidentified individual entered Jefferies' home carrying a package of some sort and emerged empty-handed minutes later, this may fairly be considered corroboration of criminal activity. On the other hand, if the unidentified individual entered Jefferies' home carrying a bottle of wine and a Bundt cake and emerged empty-handed two hours later, this is pretty solid corroboration of a previously scheduled dinner party. Therein lies the problem. Either of these scenarios is equally supported by the facts—or more precisely, lack thereof—asserted "within the four corners of the application." *Reesman*, ¶ 24.

¶33 Furthermore, law enforcement corroboration of an informant's tip "must independently test not only the veracity of the informant's account itself . . . but also to some measured degree provide the reviewing magistrate with a factual indication that criminal activity has occurred and that contraband may be found *in a particular place.*"

13

*Griggs*, ¶ 28 (emphasis added). *Accord Barnaby*, ¶ 29 ("[T]he issuing judicial officer must make a practical, common sense determination, given all the evidence contained in the application for a search warrant, whether a fair probability exists that contraband or evidence of a crime will be found in a particular place."). As discussed above, the warrant application does not state how the CS obtained information that Crystal was growing marijuana at her house. The application does not indicate whether the CS even knew the location of the Kants' residence. Moreover, the CS's statements provided in the application were inconsistent as the CS both stated that Crystal was growing marijuana at her residence, which is located in Livingston, and that Crystal "was bringing marijuana to Livingston." Finally, there was no independent verification of the location of the marijuana grow operation, or an independent indication that marijuana and drug paraphernalia would be found at the Kants' residence.[2]

¶34 The entire sum and substance of what the majority determines provides a substantial basis for concluding there was a probability of criminal activity is a CS who provided the following information: two home addresses, one of which was the CS's own address, and neither of which was the subject of the search warrant; information regarding vehicles owned by two individuals, neither of whom were the Kants; Crystal's cell phone number which could have been obtained in any number of innocent ways; and an allegation that Crystal delivered marijuana to Jefferies' home every Wednesday at approximately 7:00 p.m., which was then corroborated by an observation of a male or

---

[2] The majority does not base its decision on either of the reports that Kant challenged as too stale to be considered; therefore, my analysis does not consider them either.

female of unknown description, arriving at Jefferies' home in a car registered to Kant near 7:00 p.m. on the Wednesday following the tip, but with no other facts regarding the circumstances of that single visit from which could be inferred criminal activity. Assuming this constitutes corroboration of the CS's information, the question remains: Corroboration of what? As noted above, "corroboration must consist of more than merely innocent, public information." *Tackitt*, ¶ 34 (citing *Griggs*, ¶ 50).

¶35    For the foregoing reasons, I dissent.


/S/ JAMES JEREMIAH SHEA