FILED

09/12/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0684

DA 16-0684

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 226

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DAVID COLE ESTES,

      Defendant and Appellant,


APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DC-15-42
Honorable Brenda Gilbert, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Craig Shannon, Attorney at Law, Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Ryan W. Aikin, Assistant
Attorney General, Helena, Montana

          Bruce E. Becker, Park County Attorney, Livingston, Montana


Submitted on Briefs: July 19, 2017

Decided: September 12, 2017

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 David Cole Estes appeals the Sixth Judicial District Court's order denying his motion to suppress evidence based on a lack of particularized suspicion to seize his vehicle. We affirm.

¶2 We restate the issue on appeal as follows:

*Whether the District Court correctly denied Estes' motion to suppress evidence.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On December 7, 2014, Trooper Eric Fetterhoff stopped David Estes (Estes) for expired North Dakota vehicle registration near Livingston, Montana, on Interstate 90. Estes was the driver and only occupant of the vehicle. The vehicle was registered to a third party. Trooper Fetterhoff approached the vehicle observing two cell phones and cash in the console, food wrappers and energy drink bottles strewn around, and a sleeping bag in the back seat covering a cardboard box. At the passenger's side window, Trooper Fetterhoff detected an overwhelming odor from multiple air fresheners. Estes appeared nervous and he was shaking. Trooper Fetterhoff asked Estes to come and sit in his patrol car.

¶4 Trooper Fetterhoff gave Estes a warning for the registration. Trooper Fetterhoff and Estes waited in Trooper Fetterhoff's patrol car until dispatch responded to questions. Trooper Fetterhoff stated, "so basically, um . . . yeah you're good to go." Trooper Fetterhoff asked Estes if there was anything illegal in his vehicle. Estes denied there was.

¶5    Trooper Fetterhoff then informed Estes he was "free to go," but that his vehicle was not. Trooper Fetterhoff informed Estes that he had particularized suspicion of criminal activity within the vehicle and therefore would deploy a drug canine. Trooper Fetterhoff had a narcotics dog with him. Trooper Fetterhoff informed Estes that if the dog indicated on the vehicle, he would apply for a search warrant to search the inside of the vehicle.

¶6    During their interaction, Trooper Fetterhoff informed Estes that he was free to leave, but that his vehicle was not, five to ten times. Trooper Fetterhoff repeatedly informed Estes he could walk away, he could wait in Trooper Fetterhoff's car, Trooper Fetterhoff could take him into town, or he could wait for another officer to drive him into town. Trooper Fetterhoff informed Estes that Montana law requires him to make sure Estes feels he is free to leave and he will not run the dog until Estes confirms he feels free to leave. Estes refused to wait in Trooper Fetterhoff's car, refused a ride to town, and decided to walk away.

¶7    Trooper Fetterhoff ran the dog around the perimeter of the vehicle, where it alerted near the driver's side door. Trooper Fetterhoff applied for and received a warrant to search the vehicle. More than one hundred twenty grams of marijuana and four grams of hashish were found inside the vehicle.

¶8    On June 4, 2015, the State filed an information charging Estes with two counts of Possession of Dangerous Drugs and one count of Possession of Drug Paraphernalia. On July 27, 2015, Estes filed a motion to suppress challenging the validity of the vehicle seizure and the evidence Trooper Fetterhoff included in the search warrant application as

3

fruit of the illegal seizure. A hearing took place on September 3, 2015. The District Court denied Estes' motion to suppress on October 9, 2015. The District Court concluded particularized suspicion is the proper standard to use a canine to detect drug odors associated with a vehicle; Trooper Fetterhoff had particularized suspicion that Estes was engaged in criminal activity; the timing and duration of the stop was not unreasonable; the results of the canine search were properly included in the search warrant; and the warrant contained sufficient facts to support the probable cause determination made by the issuing justice.

¶9 Subsequently, Estes and the State reached a plea agreement under which Estes would plead guilty to Possession of Dangerous Drugs, more than 60 grams, a felony, and would retain his right to appeal the denial of his motion to suppress. The State agreed to drop the other charges and recommend a three-year deferred sentence. On May 2, 2017, Estes pled guilty, which the District Court accepted. Estes was sentenced to a three-year deferred imposition of sentence. Estes appeals the denial of his motion to suppress.

## STANDARD OF REVIEW

¶10 We review the denial of a motion to suppress to determine whether the trial court's findings of fact are clearly erroneous and whether it correctly applied those findings as a matter of law. *City of Missoula v. Iosefo*, 2014 MT 209, ¶ 8, 376 Mont. 161, 330 P.3d 1180.

¶11 In reviewing a motion to suppress evidence discovered as a result of a search pursuant to a valid warrant, we review a magistrate's determination of probable cause for the search warrant with deference and we will draw all reasonable inferences possible to

4

support the issuing magistrate's determination of probable cause. *State v. Tackitt*, 2003 MT 81, ¶ 11, 315 Mont. 59, 67 P.3d 295; *State v. Morse*, 2006 MT 54, ¶ 12, 331 Mont. 300, 132 P.3d 528. This Court must look solely to the information within the four corners of the search warrant application. *Morse*, ¶ 12. This review considers the "totality of the circumstances" rather than each individual fact in the search warrant application. *State v. Beaupre*, 2004 MT 300, ¶ 37, 323 Mont. 413, 102 P.3d 504. In undertaking this review, this Court pays great deference to a magistrate's determination that probable cause exists for the issuance of a search warrant. *Morse*, ¶ 12.

## DISCUSSION

¶12 *Whether the District Court correctly denied Estes' motion to suppress evidence.*

¶13 Estes argues that Trooper Fetterhoff did not have particularized suspicion to detain or seize Estes and his vehicle or conduct a canine search, that the duration of the stop was excessive, and the warrant application included impermissible facts, which once excised would lack probable cause.

¶14 The State asserts Trooper Fetterhoff had the requisite particularized suspicion to extend the traffic stop to conduct a canine search. Those results were then properly included in the warrant application, which contained sufficient data to establish probable cause to search the vehicle.

¶15 Estes argues that Trooper Fetterhoff did not have particularized suspicion to detain or seize Estes and his vehicle or conduct a canine search. The Montana Constitution requires that a warrant to search any place, or to seize any person or thing, must be based on probable cause. *State v. Kasparek*, 2016 MT 163, ¶ 8, 384 Mont. 56, 375 P.3d 372;

5

Mont. Const. art. II, § 11. To initiate a traffic stop, a law enforcement officer must have particularized suspicion that the occupant of the vehicle is or has been engaged in wrongdoing. Section 46-5-401, MCA; *State v. Elison*, 2000 MT 288, ¶ 15, 302 Mont. 228, 14 P.3d 456. A traffic stop may not last longer than is necessary to effectuate the purpose of the stop; however, a stop may be prolonged and the scope of the investigation enlarged so long as the scope of the investigation remains within the limits created by the facts and suspicions from which they arose. Section 46-5-403, MCA; *Rodriguez v. United States*, 135 S. Ct. 1609, 1614-15 (2015); *State v. Meza*, 2006 MT 210, ¶ 23, 333 Mont. 305, 143 P.3d 422. The justification for a stop may change as officers acquire additional information. *State v. Carlson*, 2000 MT 320, ¶ 21, 302 Mont. 508, 15 P.3d 893.

¶16 A drug-detecting dog sniff of a vehicle constitutes a search within the meaning of the Montana Constitution. *Meza*, ¶ 22. Officers may conduct a canine search without a warrant so long as they have particularized suspicion of narcotics activity. *Meza*, ¶ 22 (citing *Tackitt*, ¶ 31). Therefore, an officer may prolong a traffic stop to conduct a canine search where the officer has a particularized suspicion of narcotics activity.

¶17 Here, Trooper Fetterhoff had particularized suspicion that Estes was engaged in wrongdoing for the initial traffic stop, as Estes was driving with an expired registration. In order for Trooper Fetterhoff to extend the stop in order to conduct a canine search, he needed particularized suspicion that Estes or his vehicle was engaged in narcotics activity. Particularized suspicion requires objective data from which an experienced police officer can make certain inferences and a resulting suspicion that the occupant of

the vehicle is or has been engaged in wrongdoing. *State v. Martinez*, 2003 MT 65, ¶ 22, 314 Mont. 434, 67 P.3d 207. Whether particularized suspicion exists is a question of fact determined by examining the totality of the circumstances. *Meza*, ¶ 25. Particularized suspicion is assessed based on the information available to the officer at the time of the stop. *State v. Flynn*, 2011 MT 48, ¶ 11, 359 Mont. 376, 251 P.3d 143.

¶18 Trooper Fetterhoff had eleven years of experience as an officer of the Montana Highway Patrol with over seven hundred hours of drug and K-9 handling training. Trooper Fetterhoff testified at the suppression hearing that Estes' travel locations, Oregon and North Dakota, are "source and destination areas" for drug traffic; that food wrappers and garbage are a sign the occupant of the vehicle wanted to get from point A to point B quickly; that Estes had two cell phones and cash in the console; and that the vehicle had numerous air fresheners, which are often used to mask illicit drug odors. Trooper Fetterhoff testified these observations, in his professional opinion, were consistent with individuals engaged in illegal drug trafficking. Further, Trooper Fetterhoff testified Estes seemed inordinately nervous and was visibly shaking, a level of nervousness not usually present in an expired registration stop. Trooper Fetterhoff acknowledged that, taken individually, none of the above facts point directly to drug activity. However, based on his experience and considering the situation as a whole, he concluded particularized suspicion existed to extend the traffic stop in order for a canine search to be conducted.

¶19 At the suppression hearing, Estes offered innocent explanation for all of the facts that Trooper Fetterhoff used to find particularized suspicion for the canine search. However, "a defendant's subsequent, valid explanation for conduct that objectively

appeared suspicious . . . cannot affect the validity of a stop properly based on particularized suspicion." *State v. Flynn*, 2011 MT 48, ¶ 11, 359 Mont. 376, 251 P.3d 143.

¶20 The District Court properly applied a particularized suspicion standard to conduct a canine search. The District Court properly concluded that the "observations made by Trooper Fetterhoff gave rise to reasonable and articulable facts regarding his particularized suspicion that Estes was engaged in criminal activity." The District Court did not err or abuse its discretion.

¶21 Next, Estes argues that Trooper Fetterhoff unconstitutionally extended the stop by detaining Estes after he told Estes he was "good to go." "A person has been seized for the purpose of the Fourth Amendment only if a reasonable person would have believed that he or she was not free to leave." *State v. Case*, 2007 MT 161, ¶ 24, 338 Mont. 87, 162 P.3d 849. After review of the video of the stop, we are convinced that Trooper Fetterhoff was clear that Estes was free to leave, but that his vehicle was not. A reasonable person would feel free to leave when an officer expressly indicates that the stop is over and the person is free to go. *Case*, ¶ 26; s*ee State v. Snell*, 2004 MT 269, 323 Mont. 157, 99 P.3d 191.

¶22 Trooper Fetterhoff repeatedly informed Estes he could walk away, he could wait in Trooper Fetterhoff's car, Trooper Fetterhoff could take him into town, or he could wait for another officer to drive him into town. Trooper Fetterhoff explained to Estes that people in Estes' situation often leave the scene because they do not want to wait around. Under the circumstances, a reasonable person would feel free to leave. The District

Court did not abuse its discretion when it concluded the timing and duration of the stop were not unreasonable.

¶23 Finally, Estes asserts the warrant application should be modified. In particular, Estes argues the canine search was not based on particularized suspicion and therefore should be excised from the application; the application should then be reviewed de novo by this Court.

¶24 An application for a search warrant must state facts sufficient to show probable cause to believe that an offense has been committed and that evidence of the crime may be found in the place to be searched. *State v. Deshaw*, 2012 MT 284, ¶ 33, 367 Mont. 218, 291 P.3d 561; § 46-5-221, MCA. This Court's only function is to ensure that the issuing judicial officer had a substantial basis to determine that probable cause existed. *Deshaw*, ¶ 34. This Court pays great deference to a magistrate's determination. *Morse*, ¶ 12. "When the issuance of a search warrant is based in part on illegal information, the reviewing court shall excise the illegally obtained information from the application for search warrant and review the remaining information de novo to determine whether probable cause supported the issuance of a search warrant." *State v. Kuneff*, 1998 MT 287, ¶ 19, 291 Mont. 474, 970 P.2d 556.

¶25 We determined above that evidence from the canine search was legally obtained, as Trooper Fetterhoff had particularized suspicion necessary to conduct the search. Therefore, it was properly included in the search warrant application.

¶26 We need not address Estes' additional arguments as to the sufficiency of the warrant; a valid canine search plus the uncontested facts in the warrant application

9

provides a substantial basis that probable cause existed. We conclude that the search warrant application need not be modified and defer to the reviewing magistrate's determination that a fair probability existed that contraband or evidence of a crime would be found in Estes' vehicle.

## CONCLUSION

¶27 The District Court properly concluded that the canine search of Estes' vehicle was lawfully conducted pursuant to a particularized suspicion of narcotics activity. This information was properly included in the search warrant application. The search warrant application contained sufficient information to support a finding of probable cause. The search of Estes' vehicle was lawfully carried out pursuant to a valid search warrant. The District Court did not err when it denied Estes' motion to suppress.

¶28 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE